UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE WILLIAMS, GEORGINA GOMES, and KRISTA GILLETTE, individually and on behalf of themselves and all other similarly situated persons, known and unknown, | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 24-cv-12763 |
| v. | ) Hon. Steven C. Seeger |
| MIELLE ORGANICS LLC, and THE PROCTER & GAMBLE COMPANY, | )<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Stephanie Williams, Georgina Gomes, and Krista Gillette used hair care products made by Mielle Organics and The Procter & Gamble Company. And then, they suffered hair loss. They experienced other side effects, too, including scalp issues, blistering, and sores. They blame the hair care products for their hair-related problems.

The three of them filed a complaint against Mielle Organics and The Procter & Gamble Company on behalf of themselves and a putative class. They believe that Defendants misrepresented the safety of the products, and failed to disclose the potential risks.

The complaint alleges that they were duped, but it doesn't identify any misrepresentations. Plaintiffs allege that they were deceived, without pinpointing the deception with particularity, as the Federal Rules require.

Defendants moved to dismiss. For the following reasons, Defendants' motion to dismiss is granted.

### Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Stephanie Williams, Georgina Gomes, and Krista Gillette live in different states, but they live parallel lives when it comes to hair care. Williams lives in Illinois, Gomes lives in Massachusetts, and Gillette lives in California. *See* Cplt., at ¶¶ 20–22 (Dckt. No. 1).

They don't live near each other, but they do share the same interest in hair care. Each of them bought the same products. *Id.* at ¶ 2. They bought Mielle Organics Rosemary Mint Strengthening Shampoo, Mielle Organics Rosemary Mint Strengthening Conditioner, and Mielle Organics Rosemary Mint Scalp & Strengthening Hair Oil. *Id.* at ¶ 1.

Mielle Organics and The Procter & Gamble Company ("P&G") manufacture, distribute, and sell those three products. *Id.*

Plaintiffs apparently did their homework before buying the products, and checked out what the bottles or packaging had to say. Plaintiffs "reviewed the accompanying labels and disclosures" on the products, and "understood them as representations and warranties by Defendants that the Products were properly manufactured, free from defects, and safe for their intended use." *Id.* at ¶ 23.

Plaintiffs went home and used the shampoo, conditioner, and hair oil. It turned into a hair care nightmare. They suffered hair loss, scalp issues, blistering, and/or sores. *Id.* at ¶ 2.

The complaint doesn't pin down what, exactly, caused the problems. But Plaintiffs allege that the products contain "ingredients" that must have caused their injuries. *Id.* Maybe they're allergic to some of the chemicals. Or maybe there is some other problem.

Plaintiffs believe that Mielle Organics and P&G duped them, but they don't explain how. Instead, the complaint hovers at a high level of generality.

As Plaintiffs see it, "Defendants have misrepresented that the Products are safe." *Id.* at ¶ 3. Defendants did not disclose in any advertising, labeling, packaging, or marketing that its products carried risks of causing hair loss or other injuries. *Id.* at ¶ 6. And Defendants didn't make a "reasonable effort to test its Products to ensure that the Products would not cause hair loss or other injuries." *Id.* at ¶ 5.

Plaintiffs bought the products without knowing that they were "harmful and misbranded." *Id.* at ¶ 11. And they wouldn't have bought the products if they had known about the risk of injury. *Id.* at ¶ 12.

Alternatively, Plaintiffs allege that they would have paid less if they had known that the hair products would cause hair loss and other physical injuries. *Id.* at ¶ 14. That allegation is hard to swallow. People don't tend to haggle for shampoo. The places that sell hair care products don't allow haggling like some type of Persian bazaar.

Frankly, it's hard to imagine anyone paying anything for shampoo and conditioner that would cause hair loss and other problems. If Mielle Organics and P&G told the world that its hair care products caused hair loss, they couldn't give it away for free.

The complaint includes three claims. The first claim is common-law fraud. The second claim is unjust enrichment. And the third claim is a fraud claim under state consumer-protection statutes. *Id.* at ¶¶ 44–71.

Defendants moved to dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

## Analysis

Defendants moved to dismiss all three claims. This Court will rejigger the order, and will address the common-law fraud claim (Count I) and the statutory fraud claim (Count III), before turning to the unjust enrichment claim (Count II).

For now, this Court will set aside the choice-of-law issue. State law governs the substance, but federal law governs the procedure. And here, the complaint does not satisfy the pleading standard under the Federal Rules of Civil Procedure, regardless of what law applies.

### I. The Fraud Claims

The complaint contains two fraud claims, including a claim under the common law (Count I) and a claim under state statutes (Count III). The complaint does not come close to satisfying the requirements under the Federal Rules. It's all hat, no cattle.

A complaint cannot allege fraud, and leave it at that. The Federal Rules require a plaintiff to put meat on the bones, and plead fraud with particularity. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). That rule applies to fraud-based claims, regardless of how the claim is styled. It isn't limited to claims under the common law.

A plaintiff must provide the "who, what, when, where, and how" of the alleged fraud. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). A complaint must offer the "first paragraph of any newspaper story," not merely the attention-grabbing

3

headline. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

"To satisfy Rule 9(b)'s particularity standard, a complaint must state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) (cleaned up).

"What constitutes 'particularity,' however, may depend on the facts of a given case." *See United States ex rel. Berkowitz*, 896 F.3d at 839. The Seventh Circuit has warned against an "overly rigid view of the formulation." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*, 631 F.3d 436, 442 (7th Cir. 2011).

Plaintiffs must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016). That's not a big ask. After all, a plaintiff who gets duped should be able to fill in the blanks, tell the story, and explain what happened.

Requiring specificity isn't a big burden on plaintiffs, but it protects defendants in a big way. The need to plead with particularity shields defendants from explosive-yet-baseless allegations of misconduct.

"Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *See Pirelli Armstrong*, 631 F.3d at 442; *see also Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748–49 (7th Cir. 2005) ("The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless. It also forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims.").

The complaint at hand falls far short of that heightened standard. A reader has to search far and wide to find the details of the alleged fraud, before coming up empty.

The headline isn't hard to spot. Plaintiffs allege that "Defendants made fraudulent misrepresentations and/or omissions to Plaintiffs . . . regarding the Products." *See* Cplt., at ¶ 46 (Dckt. No. 1). They proclaim that "Defendants have misrepresented that the Products are safe." *Id.* at ¶ 3.

But the complaint doesn't have much else to offer, except generalities, conclusions, and legalese. The complaint doesn't reveal how, exactly, Plaintiffs were duped. The complaint doesn't quote the packaging, or point to any language on the bottles, or identify any promise made by Mielle Organics and P&G about their products. The complaint doesn't even include a picture of the labels, which shouldn't be hard to find.

4

Pinning down the representations shouldn't be a heavy lift. After all, the complaint alleges that Plaintiffs "reviewed the accompanying labels and disclosures." *See* Cplt., at ¶ 23 (Dckt. No. 1). If Plaintiffs read the labels and the list of ingredients, they should be able to say what they read.

As things stand, Plaintiffs allege a misrepresentation, without identifying a specific representation. *Id.* at ¶ 3. And they allege a misbranding, without saying anything about the branding. *Id.* at ¶ 10.

The same goes for the allegation about a failure to disclose. To state a claim about a fraudulent omission, a plaintiff must plead that "the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *See Connick*, 675 N.E.2d at 593 (Illinois law); *Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC*, 111 N.E.3d 266, 277 (Mass. 2018) (Massachusetts law); *Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1238 (Cal. 2024) (California law).

The complaint does not plead with particularity any facts that could give rise to a duty to disclose. Plaintiffs allege in a conclusory fashion that "Defendants have a duty to ensure its Products did not contain ingredients that would cause hair loss and other injuries n [sic] their consumers." *See* Cplt., at ¶ 5 (Dckt. No. 1). But that's as close as they get.

A duty to disclose can arise when there is a "fiduciary or confidential relationship," or where "plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *See Connick*, 675 N.E.2d at 593; *see also Taylor v. Am. Chemistry Council*, 576 F.3d 16, 31 (1st Cir. 2009) (Massachusetts law); *Terpin v. AT & T Mobility LLC*, 118 F.4th 1102, 1110–11 (9th Cir. 2024) (California law). This case doesn't involve those scenarios.

Maybe the idea is that the packaging contained half-truths. A statement could constitute fraud even if it is literally true, because "a 'half-truth' is sometimes more misleading than an outright lie." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 969 (2004); *Integrated Genomics, Inc. v. Gerngross*, 636 F.3d 853, 863 (7th Cir. 2011) ("[A] false statement may include a half-truth which, although technically accurate, is misleading because it omits important qualifying information that, had it been known, would have caused the plaintiff to act differently."); *United States v. Sloan*, 492 F.3d 884, 891 n.2 (7th Cir. 2007) ("There is a Yiddish proverb that defines a half-truth as a whole lie."); 35 Am. Jur. 2d Proof of Facts § 6 (2025) ("It is an old adage that half a truth is a lie."); 37 Am. Jur. 2d Fraud and Deceit § 104 (2025) ("Fraudulent representations may consist of half-truths calculated to deceive.").

"Falsity is baked into a half-truth – that's why it is called a half-truth, not a whole-truth. The other half of a half-truth is a half-*un*truth. Another name for a half-untruth is a false statement. And a false statement can give rise to liability." *See Emerging Indus. Tech. v. Fidelity Nat'l Info. Servs., Inc.*, 2024 WL 3791475, at *19 (N.D. Ill. 2024); *Burke v. Nationstar Mort., LLC*, 2022 WL 888811, at *19 (N.D. Ill. 2022) ("It is the difference between failing to tell your clerks that there is a tiger in the office, and telling your clerks that there is a cat in the office (which, it turns out, happens to be a tiger).").

5

If that's the theory, Plaintiffs have more work to do. A half-truth relies on a statement that's partly true, and partly false. The statement might be literally true, but it doesn't give the full story. If that's the theory, then Plaintiffs should be able to say what that statement is.

The complaint doesn't get over the heightened hump of Rule 9(b), because it leaves the reader wondering how, exactly, Plaintiffs got duped by the hair care products. Without filling in the gaps, Plaintiffs cannot go forward. But this Court will grant leave to amend.

## II.     Unjust Enrichment

The other claim is unjust enrichment. That claim rises or falls with the fraud claims.

"[U]njust enrichment is not a separate cause of action."[1] *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (Illinois law); *see also Lopes v. Commonwealth*, 811 N.E.2d 501, 509 (Mass. 2004) (Massachusetts law). "Rather, it's a condition brought about by fraud or other unlawful conduct." *See Vanzant*, 934 F.3d at 739.

Without the fraud claims, the unjust enrichment claim fails, too. *See, e.g.*, *Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 756–57 (N.D. Ill. 2023) (collecting cases).

## Conclusion

For the foregoing reasons, the motion to dismiss is hereby granted. The complaint is dismissed without prejudice. The Court grants Plaintiffs leave to file an amended complaint within two weeks of the entry of this order.

Date:  September 25, 2025

Steven C. Seeger
United States District Judge

---

[1] California law might recognize a separate cause of action for unjust enrichment, but it wouldn't make a difference here. "Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action." *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (collecting California Appellate Court cases). To allege a claim of unjust enrichment under California law, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id.* That said, the same conduct underlies Gillette's fraud claims and her unjust-enrichment claim. *See* Cplt., at ¶¶ 54–58 (Dckt. No. 1). It's all about fraud. So, even if this Court assumes that California law allows an independent unjust-enrichment claim, Rule 9(b) nonetheless requires Gillette to plead with particularity an unjust-enrichment claim about fraudulent conduct. *See, e.g.*, *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Gillette did not plead the "circumstances constituting fraud" with particularity, so her unjust-enrichment claim fails, too. *See* Fed. R. Civ. P. 9(b).